**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JABARI PHILLIPS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MML INVESTORS SERVICES, LLC,

Defendant.

Case No. 3:25-cv-30164

**AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Jabari Phillips ("Plaintiff") brings this Class Action Complaint ("Complaint") against MML Investors Services, LLC ("MMLIS" or "Defendant"), individually and on behalf of the Classes (defined below).[1]

## I. INTRODUCTION

1. Plaintiff brings this action to recover damages arising out of MMLIS's unlawful conduct related to its automatic enrollment of investment account customers into two sweep programs—their Advantage Cash Sweep Program (the "ACS Program") and the Insight Cash Sweep Program (the "ICS Program") (together, the "Deposit Sweep Programs"), by which MMLIS transfers uninvested cash from those customers' accounts into interest-bearing deposit accounts at third-party Program Banks and pays unreasonably low interest payments to customers on that cash.

2. Ostensibly, the primary purpose of the Deposit Sweep Programs is to provide customers with interest on their uninvested cash.

3. MMLIS promised its customers that interest rates would "vary based on prevailing economic and business conditions."

4. However, MMLIS uses its Deposit Sweep Programs mainly to generate substantial fees for itself, while paying unreasonably low interest rates on cash held in the Deposit Sweep Programs to customers—currently as low as 0.75%—even as the federal funds benchmark rates

[1] The allegations herein are based on personal knowledge as to Plaintiff's own conduct, and are made on information and belief as to all other matters, based on an investigation by counsel, which included a review of documents created and distributed by Defendant; Financial Industry Regulatory Authority ("FINRA") rules and regulations; and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff submits that discovery will further support the allegations in this Class Action Complaint ("Complaint").

have skyrocketed and competing financial institutions, including Vanguard and Fidelity, offer interest rates more than five times higher on their own customers' swept cash.

5. Notably, MMLIS did not always pay customers such low interest rates on uninvested cash. Prior to 2023, MMLIS customers could sweep uninvested cash into money market funds—where they received returns of up to 4.5% on their cash. But, in the first half of 2023, as the federal funds benchmark rate was climbing to a fifteen-year high, MMLIS automatically enrolled its customers, including Plaintiff, in the Deposit Sweep Programs, which pay paltry interest rates as low as 0.75%.

6. MMLIS benefits from the high interest rate environment and the way it structures its Deposit Sweep Programs by receiving substantial fees on cash held in the Deposit Sweep Programs that routinely exceed the interest paid to the customer themselves. Accordingly, MMLIS designed, implemented, and operated the Deposit Sweep Programs to benefit itself at the expense of its customers, which violates MMLIS's fiduciary, contractual, regulatory, and common law duties to its customers and falls below the applicable standards of care.

7. Plaintiff, individually and on behalf of the Classes, brings this class action to remedy the significant financial harm caused by Defendant's automatic transfer and enrollment of customers into the Deposit Sweep Programs as a means to enrich itself, and asserts claims against Defendant for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Massachusetts General Laws Chapter 93A, violation of New York General Business Law § 349, and unjust enrichment.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and

is a class action in which there are more than 100 Class members, Plaintiff is a citizen of a different state than Defendant, and greater than two-thirds of the Classes reside in states other than the state in which Defendant is a citizen.

9. This Court has personal jurisdiction over Defendant as MMLIS maintains its principal place of business in Massachusetts.

10. Venue is appropriate within this District under 28 U.S.C. § 1391. At all relevant times, Defendant maintained its principal place of business in this District and engaged in a substantial portion of the activity at issue in this Complaint in this District.

11. No other forum would be more convenient for the parties and witnesses to litigate this case.

## III. PARTIES

### A. Plaintiff

12. Plaintiff Jabari Phillips is a citizen of New York and resides in Brooklyn, New York. Plaintiff has had an investment account with MMLIS since June 2021. From the time Plaintiff opened his investment account in 2021 until April 2023, uninvested cash in his investment account was placed in a money market fund (specifically, Fidelity Government Cash Reserves, "FDRXX"). During the time that Plaintiff's uninvested cash was placed in FDRXX, Plaintiff earned a return that closely tracked the federal funds rate and one-month Treasury rate, reaching 4.50%. At the time he opened his investment account with MMLIS, Plaintiff entered into agreements with MMLIS governing his investment account and the treatment of uninvested cash.

13. In April 2023, MMLIS automatically transferred the cash previously held in Plaintiff's money market fund to a deposit account that was a part of MMLIS's ACS Program. From April 2023 and at all times thereafter, MMLIS continuously swept uninvested cash balances from Plaintiff's account into a deposit account that was a part of MMLIS's ACS Program. MMLIS

paid interest payments to Plaintiff on uninvested cash balances held in the deposit accounts at the ACS Program's unreasonably low interest rates. Currently, Plaintiff is receiving monthly interest payments at a rate of 0.75% on cash balances maintained in the ACS Program.

14. The following chart shows the rates of interest MMLIS provided to Plaintiff (the "Advantage Cash Sweep Program Interest Rate") for cash held in deposit accounts as part of the ACS Program from April 2023 to August 2025:

**Table 1**

| Month | Advantage Cash Sweep Program Interest Rate | Benchmark Federal Funds Rate |
|---|---|---|
| April 2023 | 1.01% | 4.75% to 5.00% |
| May 2023 | 1.08% | 4.75% to 5.00% (until May 3, 2023)<br>5.00% to 5.25% (as of May 3, 2023) |
| June 2023 | 1.08% | 5.00% to 5.25% |
| July 2023 | 1.08% | 5.00% to 5.25% (until July 26, 2023)<br>5.25% to 5.50% (as of July 26, 2023) |
| August 2023 | 1.08% | 5.25% to 5.50% |
| September 2023 | 1.08% | 5.25% to 5.50% |
| October 2023 | 1.08% | 5.25% to 5.50% |
| November 2023 | 1.08% | 5.25% to 5.50% |
| December 2023 | 1.08% | 5.25% to 5.50% |
| January 2024 | 1.08% | 5.25% to 5.50% |
| February 2024 | 1.08% | 5.25% to 5.50% |
| March 2024 | 1.08% | 5.25% to 5.50% |
| April 2024 | 1.08% | 5.25% to 5.50% |
| May 2024 | 1.08% | 5.25% to 5.50% |
| June 2024 | 1.08% | 5.25% to 5.50% |
| July 2024 | 1.08% | 5.25% to 5.50% |
| August 2024 | 1.08% | 5.25% to 5.50% |
| September 2024 | 0.95% | 5.25% to 5.50% (until September 18, 2024)<br>4.75% to 5.00% (as of September 18, 2024) |
| October 2024 | 0.95% | 4.75% to 5.00% |
| November 2024 | 0.90% | 4.75% to 5.00% (until November 7, 2024)<br>4.50% to 4.75% (as of November 7, 2024) |
| December 2024 | 0.75% | 4.50% to 4.75% (until December 18, 2024)<br>4.25% to 4.50% (as of December 18, 2024) |
| January 2025 | 0.75% | 4.25% to 4.50% |
| February 2025 | 0.75% | 4.25% to 4.50% |
| March 2025 | 0.75% | 4.25% to 4.50% |
| April 2025 | 0.75% | 4.25% to 4.50% |
| May 2025 | 0.75% | 4.25% to 4.50% |

| Month | Advantage Cash Sweep Program Interest Rate | Benchmark Federal Funds Rate |
|---|---|---|
| June 2025 | 0.75% | 4.25% to 4.50% |
| July 2025 | 0.75% | 4.25% to 4.50% |
| August 2025 | 0.75% | 4.25% to 4.50% |

### B. Defendant

15. Defendant MMLIS is a Massachusetts limited liability company with its place of business located in Springfield, Massachusetts. MMLIS is a broker-dealer and registered investment adviser registered with the United States Securities and Exchange Commission ("SEC").

## IV. FACTUAL ALLEGATIONS

16. MMLIS is an SEC-registered broker-dealer and investment advisor that manages more than $274 billion in client assets.

17. MMLIS offers a number of financial products to investors through its registered representatives and investment adviser representatives, including brokerage accounts and investment advisory services.

18. Brokerage accounts are securities accounts that allow customers to trade mutual funds, stocks, and other securities. In connection with each of these accounts, customers enter into agreements with MMLIS.

19. MMLIS is also an investment advisor that offers different types of advisory services, including accounts MMLIS manages, accounts managed by other investment advisers, and fee-based financial planning. In connection with these advisory services, customers enter into written advisory agreements with MMLIS.[2]

[2] *Form CRS Customer Relationship Summary for Retail Investors*, MMLIS (Oct. 22, 2024), https://files.brokercheck.finra.org/crs_10409.pdf.

20. MMLIS offers a sweep program to its customers. A sweep program is a "service provided by a broker or dealer where it offers to its customer the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product . . . or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation." *See* 17 C.F.R. § 240.15c3-3(a)(17) (2025).

21. MMLIS selects the sweep programs that are available to Plaintiff and Class members and may designate one of the sweep vehicles as the default option.

22. MMLIS's agreements with Plaintiff and Class members state that the agreements are governed by the law of the Commonwealth of Massachusetts.

**A. Until Early 2023, MMLIS Offered Its Customers the Ability to Sweep Uninvested Cash to Money Market Funds**

23. Prior to 2023, MMLIS offered customers various "core account investment vehicle"—or sweep—options that are "used for settling securities transactions and holding credit balances."[3] These core account investment vehicles were the accounts into which customers' uninvested cash would be automatically placed, or "swept." MMLIS provided customers a variety of core account investment vehicles, including money market funds and deposit accounts.

24. At the time MMLIS customers applied to open their investment accounts, they could elect a particular core investment vehicle. If a customer did not elect a particular core investment vehicle in his or her application, he or she would be enrolled in the default core investment vehicle as noted by his or her investment representative.

25. MMLIS's Bank Deposit Sweep Program Disclosure effective March 2022 explained that "in addition to the [Bank Deposit Sweep Program, a core investment option that

---

[3] *Bank Deposit Sweep Program (BDSP®) Disclosure Document*, MMLIS (archived May 22, 2022), https://web.archive.org/web/20220526011641/https://fieldnet.massmutual.com/public/mmlisi/pdfs/bdsp-disclosure.pdf.

placed customers' cash in deposit accounts with program banks], customers may elect a Money Fund as a core account investment vehicle if this option is made available to you by your Broker/Dealer."[4] Until 2023, customers who had been enrolled in the Bank Deposit Sweep Program could change their core account investment vehicle to a money market fund, provided that the customer's broker-dealer had made a money market fund available as a core investment option.

26. The Bank Deposit Sweep Program Disclosure assured MMLIS customers that "you will be notified as soon as is reasonably practical of any change in the Program that results in changing the core account investment vehicle for your Brokerage Account" and that "[i]f you object to the core account investment vehicle that we select, or, if at any time the Program does not meet your needs . . . your investment representative can assist you in finding an alternative core account investment vehicle or in transferring your Brokerage Account to another provider or another program."[5]

### B. In Early 2023, MMLIS Automatically Transferred Plaintiff's and Money Market Sub-Class Members' Cash from Money Market Funds to Significantly Lower-Yielding Deposit Accounts in its Deposit Cash Sweep Programs

27. In 2023, as the federal funds benchmark rate was climbing to a fifteen-year high, MMLIS changed the options available to its customers to place their uninvested cash by beginning to offer the ACS Program and ICS Program and making them the only core investment option available to virtually all U.S. customers. In addition to making these Deposit Sweep Programs the only options available for newly-opened MMLIS accounts, MMLIS automatically transferred

[4] *Id*. at 2.
[5] *Id*. at 5.

customers who had previously relied on money market funds as their core investment vehicles into these programs.

### 1. MMLIS's Advantage Cash Sweep Program

28. Under the ACS Program, uninvested cash in a customer's brokerage account is automatically deposited (or "swept") into "interest-bearing Federal Deposit Insurance Corporation ("FDIC") insurance eligible Program Deposit Accounts . . . at one or more FDIC-insured financial institutions [the "Program Banks"]."[6]

29. The ACS Program is a core account sweep option that is the default option for eligible customers. Customers eligible[7] for the ACS Program cannot have their uninvested cash automatically swept to a money market fund. Instead, the ACS Program must be their core investment vehicle. Only accounts that are ineligible for the ACS Program may elect other core investment options.

30. Beginning on or around February 15, 2023, MMLIS automatically enrolled all eligible brokerage accounts into the ACS Program as their core investment vehicle without obtaining the affirmative consent of the customers. This made the ACS Program the default core

---

[6] *Advantage Cash Sweep Disclosure Document* at 2, MMLIS, https://compass.massmutual.com/api/public/assets/file/blt585e249d4ef3af18 (the "ACS Program Disclosure") (last accessed Sept. 16, 2025). Currently, the Program Banks are American Express National Bank, Bank of Baroda, Citibank N.A., Deutsche Bank, East West Bank, First Horizon Bank, Malvern Federal Savings Bank, Morgan Stanley Bank, N.A., Morgan Stanley Private Bank, N.A., SouthState Bank, National Association, South Street Bank and Trust Co., The Bank of East Asia, TriState Capital Bank, Truist Bank, UMB Bank, Umpqua Bank, and Wells Fargo Bank, National Association. *Advantage Cash Sweep Program Banks*, MMLIS, (July 1, 2025), https://compass.massmutual.com/api/public/assets/file/bltb7a2b1287ecb5a26.

[7] The ACS Program is available to "individuals, certain non-profit organizations, and to certain fiduciaries and trusts, provided that the beneficiaries are individuals or otherwise eligible" as well as MMLIS brokerage accounts "in the name of business entities including corporations, limited liability companies, and partnerships" and "certain custodial individual retirement accounts and health savings accounts." *Advantage Cash Sweep Disclosure Document* at 2, 5, 6. Keogh Plans and non-U.S. accounts are not eligible to participate in the ACS Program.

account sweep option for all eligible accounts. Accounts that had previously used money market funds as their default sweep options were no longer able to do so.

**2. MMLIS's Insight Cash Sweep Program**

31. The ICS Program operates similarly to the ACS Program. Under the ICS Program, uninvested cash in a customer's brokerage account is swept into "interest-bearing Deposit Accounts at one or more Federal Deposit Insurance Corporation ("FDIC") insurance eligible Program Deposit Accounts . . . at one or more FDIC-insured financial institutions[.]"[8]

32. "The Insight Cash Sweep Program (the "Program") is . . . [a] core account sweep option for available cash balances from deposits to your Brokerage Account, securities transactions, dividend and interest payments, allocations to cash and other activities."[9]

33. Although customers eligible[10] for the ICS Program may continue to invest in money market funds, they may not elect a money market fund as their core account investment vehicle. Instead, the ICS Program must be their core investment vehicle. In other words, customers eligible for the ICS Program cannot have their uninvested cash automatically swept to a money market fund. Only accounts that are ineligible for the ICS may elect other core investment options.

---

[8] *Insight Cash Sweep Disclosure Document*, MMLIS, https://compass.massmutual.com/api/public/assets/file/blt57decee54b0ef84a (the "ICS Program Disclosure") (last access Sept. 16, 2025). Currently, the Program Banks are American Express National Bank, Bank of Baroda, Citibank N.A., Deutsche Bank, East West Bank, First Horizon Bank, Malvern Federal Savings Bank, Morgan Stanley Bank, N.A., Morgan Stanley Private Bank, N.A., SouthState Bank, National Association, South Street Bank and Trust Co., The Bank of East Asia, TriState Capital Bank, Truist Bank, UMB Bank, Umpqua Bank, and Wells Fargo Bank, National Association. *Insight Cash Sweep Program Banks*, MMLIS (May 2, 2025), https://compass.massmutual.com/api/public/assets/file/blt5854b9331f3bcb73.

[9] ICS Program Disclosure at 2.

[10] According to MMLIS's Insight Program Disclosure, "The Insight Cash Sweep Program is available only to individual retirement accounts ('IRAs') subject to Section 4975 of the Internal Revenue Code in certain MMLIS investment advisory programs. Eligible accounts are IRAs in the following MMLIS Wealth Management Services advisory programs: Advisor Select, Portfolio Solutions, UMA, SMA Select, Strategist Select, Guided Portfolios, Brinker Capital, Fund Select, Fund Select Premier, and Fund Strategist Provider." *Id.*

34. Beginning on or around April 20, 2023, MMLIS automatically enrolled all eligible brokerage accounts into the ICS Program as their core investment vehicle without obtaining the affirmative consent of the customers.[11] This made the ICS Program the default core account sweep option for all eligible accounts. Accounts that had previously used money market funds as their default sweep options were no longer able to do so.

### C. MMLIS's Deposit Cash Sweep Programs Pay Unreasonably Low Returns that Are Divorced from Market Conditions and Are Substantially Lower Than The Returns Provided By Several Objective Benchmarks, Including the Money Market Funds Where MMLIS Previously Placed Customers' Uninvested Cash

35. The Deposit Sweep Programs offer significantly lower returns on investment on customers' uninvested cash than alternative sweep options and other objective benchmarks, including the FDRXX money market fund into which Plaintiff's and the Money Market Sub-Class members' cash was previously swept.

36. The following chart shows the Deposit Sweep Programs' rates of return, compared with the FDRXX rate of return and the federal funds benchmark rate from February 2023 to present. The Deposit Sweep Programs have consistently yielded substantially less than (1) FDRXX and (2) the federal funds rate in effect at the time:

[11] ICS Program Disclosure.

**Figure 1**[12]




37. Money market fund rates, like FDRXX, provide a benchmark for determining what constitutes a fair and reasonable interest rate and/or a reasonable alternative investment for customers' cash. Significantly, as set forth in Figure 1, FDRXX, the money market fund to which MMLIS swept Plaintiff's and the Money Market Sub-Class's (defined below) cash before forcing them into the Deposit Sweep Programs, has yielded between 4% and 5.02% since the Money Market Sub-Class was forced to transfer into the Deposit Sweep Programs.

38. MMLIS's Deposit Sweep Program interest rates are also far below the Board of Governors of the Federal Reserve System's (the "Federal Reserve") benchmark federal funds rates, which are an appropriate point of comparison for the reasonableness of MMLIS's interest rates.

---

[12] The federal funds rate is represented as the midpoint of the range in effect at the time.

Indeed, as the Federal Reserve explains on its website, "[c]hanges in the target range for the federal funds rate influence short-term interest rates for other financial instruments."[13]

39. Since 2022, the federal funds rate soared from a low of 0.08% to a high of 5.33% in 2024. As these rates were climbing, MMLIS failed to offer similar interest rates to customers in the Deposit Sweep Programs. Today, while the current benchmark federal funds rates are 4.00% to 4.25%, Plaintiff receives only 0.75% interest on his cash held in the ACS and even MMLIS customers with the highest cash balances—in excess of $1,000,000—receive only 2.40% interest.

40. Defendant's interest rates for deposits in the Deposit Sweep Programs are also significantly lower than short term U.S. Treasury rates. For example, the 1-Month U.S. Treasury Rate on September 12, 2025 was 4.24%, compared to Defendant's rates under the ACS Program as low as 0.75% and ICS Program of 1.10% that same day. The chart below compares the return Plaintiff received on his swept cash with the 1-Month U.S. Treasury Rate and FDRXX return rate from the time he opened his account to present:

[13] *Economy at a Glance – Policy Rate*, Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last updated Sept. 16, 2025).

**Figure 2**




41. As the Figure 2 illustrates, when Plaintiff's uninvested cash was swept to FDRXX, his return on that cash closely tracked the 1-Month U.S. Treasury Rate. Then, in April 2023, when he was forced to enroll in the ACS Program, the return on Plaintiff's uninvested cash plummeted, generally yielding about 300 to 400 basis points below the rate he would have received, if he had been permitted to continue to sweep uninvested cash to FDRXX.

42. Moreover, the rates offered through the Deposit Sweep Programs are significantly lower than the rates offered through sweep programs at other financial institutions. Other financial institutions that use sweep programs pay or secure significantly higher rates than MMLIS—in some instances, even more than five times higher. For example, the following chart compares MMLIS's Deposit Sweep Programs' current rates with those of two comparable programs:

| ACS Rate[14] | ICS Rate[15] | Vanguard Sweep Rate[16] | Fidelity Sweep Rate[17] |
|---|---|---|---|
| 0.75% to 2.40% | 1.10% | 3.65% | 3.96% |

43. MMLIS did not secure and pay fair or reasonable rates of interest to Plaintiff and the Classes on deposits made via the Deposit Sweep Programs and did not act in its customers' best interests. Moreover, MMLIS transferred Plaintiff's and Money Market Sub-Class members' funds from their higher-yielding money market fund core investment vehicles to the low-yielding Deposit Sweep Programs while preventing them from continuing to sweep funds into money market funds going forward.

### D. The Deposit Cash Sweep Programs Benefit MMLIS at the Expense of Its Customers

44. MMLIS's decision to direct all cash awaiting reinvestment in eligible accounts to the Deposit Sweep Programs benefits MMLIS at the expense of its investment account customers.

45. The timing of the requirement that all eligible customers participate in the Deposit Sweep Programs is telling. The federal funds benchmark rate sat at 0.10% or below from April 2020 until March 2022. The Federal Reserve began to increase these rates in March 2022, and, by December 2022, the benchmark rate was above 4.0%. In December 2022 and again in February

---

[14] *See Cash Sweep Programs*, MassMutual, https://www.massmutual.com/investment/cash-sweep-programs (last visited Sept. 16, 2025).
[15] *Id.*
[16] *See Vanguard Cash Plus Account*, Vanguard, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Sept. 16, 2025).
[17] *Help your cash work harder*, Fidelity, https://www.fidelity.com/go/manage-cash-rising-costs (last visited Sept. 16, 2025).

2023 (when it again raised the benchmark rates target range to 4.50 to 4.75%), the Federal Reserve indicated that it anticipated "ongoing increases."[18]

46. With these rates over 4.5% and expected to continue climbing, MMLIS forced nearly all its U.S. customers to sweep their cash into the Deposit Sweep Programs. Because of the rising interest rate environment, banks would be willing to pay significant interest on MMLIS's customers' cash held in deposit accounts. Forcing its customers to enroll in the Deposit Sweep Programs presented MMLIS with an opportunity to take the lion's share of that interest for itself.

47. The interest rates that MMLIS pays to or secures for its customers in the Deposit Sweep Programs are unreasonably low, while MMLIS pockets significant fees in connection with the Programs. This constitutes a breach of MMLIS's fiduciary, contractual, regulatory, and common law duties to their customers and falls below the applicable standards of care.

48. MMLIS receives fees from each Program Bank in connection with the ACS Program that are equal to a percentage of the deposit balances in the program and may reach up to 8%. The fees MMLIS receives in connection with the ACS Program routinely exceed the returns customers participating in the ACS Program receive on their swept cash.

49. Likewise, MMLIS receives fees in connection with the ICS Program that routinely exceed and negatively affect the returns customers participating in the ICS Program receive on their swept cash. The fees MMLIS receives in connection with the ICS Program relate to the federal funds rate in effect at the time. Currently, MMLIS earns a fee of $13.00 for each account within the ICS Program each month.

---

[18] Jesse Pound, *Here's what changed in the new Fed* statement, CNBC, (Feb. 1, 2023, at 2:04 PM ET), https://www.cnbc.com/2023/02/01/heres-what-changed-in-the-new-fed-statement.html.

50. The terms of the Deposit Sweep Programs, wherein MMLIS earns higher fees by placing more cash (for the ACS Program) and more customers (for the ICS Program) into deposit sweep accounts, create an incentive for MMLIS to maximize the numbers of customers enrolled and amounts of customer cash placed in the Deposit Sweep Programs and incentivized MMLIS to automatically enroll all eligible customers, even when those customers had previously had their uninvested cash swept to higher-yielding core account vehicles.

51. Rather than exercising its discretion in the operation of the Deposit Sweep Programs to benefit Plaintiff and the Classes, MMLIS abuses its discretion in the operation of the Deposit Sweep Programs to benefit itself.

52. The rates paid by MMLIS to its customers pursuant to the Deposit Sweep Programs violate MMLIS's duties to its customers because these rates are unreasonable and were determined by placing Defendant's best interests ahead of the best interests of customers enrolled in the Deposit Sweep Programs.

53. MMLIS's continual sweep of Plaintiff's and the Classes' uninvested cash into the Deposit Sweep Programs constitutes a continuing wrong and is a continuing breach of MMLIS's duties to Plaintiff and the Classes. Each time MMLIS places Plaintiff's and the Classes' cash into the Deposit Sweep Programs, MMLIS newly injures Plaintiff and the Classes.

## E. MMLIS's Duties to Its Customers

### 1. MMLIS's Contractual Duty to Provide Interest Rates that Were Based on Business and Economic Conditions

54. For all customers in the Deposit Sweep Programs, MMLIS promised interest rates on deposit accounts held within the programs would "vary based upon prevailing economic and business conditions."[19]

[19] ACS Program Disclosure at 4; ICS Program Disclosure.

55. As Figure 1 and Figure 2 show, although short-term rate conditions improved drastically, the Deposit Sweep Programs' interest rates generally trailed 300 to 400 basis points behind. For example, as 1-month U.S. Treasury yields skyrocketed to over 5%, customers with under $1,000,000 in the ACS Program never received more than a 1.81% interest rate, and the ICS Program never paid more than 1.46% interest.

56. Rather than determine the interest rates applicable to the Deposit Sweep Programs based on economic and market conditions, as MMLIS promised, MMLIS determined the rates based on a desire to increase its revenues at the expense of its customers. Accordingly, MMLIS breached their promise to pay rates determined based on economic and business conditions.

57. Under the ACS Program Disclosure and ICS Program Disclosure, MMLIS also owed all customers in the Deposit Sweep Programs contractual duties under the implied covenant of good faith and fair dealing, which precluded MMLIS from frustrating and unreasonably interfering with its customers' right to receive the benefits of the contract. MMLIS violated these duties when it acted in bad faith and abused its discretion by paying customers unreasonable sweep interest rates that were well below several objective benchmarks, including the federal funds rate (which climbed as the sweep interest rates essentially remained the same) and competitors' rates.

**2. Regulation Best Interest**

58. Where MMLIS is acting in its capacity as a broker-dealer, as it does when it offers brokerage services and recommends and/or automatically enrolls customers in certain sweep products, it "shall act in the best interest of the retail customer at the time [a] recommendation is made, without placing the financial or other interest of the broker, dealer . . . ahead of the interest of the retail customer." *See* Regulation Best Interest ("Reg. BI"), 17 C.F.R. § 240.15l-1 (2019).

59. Reg. BI incorporates "key principles underlying fiduciary obligations." 84 Fed. Reg. 33318, 33320 (July 12, 2019). Reg. BI and common law principles of fiduciary obligations

"generally yield substantially similar results in terms of the ultimate responsibilities owed to retail investors."[20]

60. Under Reg. BI, the investor "will be entitled to a recommendation . . . or advice . . . that is in the best interest of the retail investor and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

61. Reg BI applies when a broker-dealer makes a recommendation as to "securities transactions or investment strategies involving securities" as well as to "account recommendations." 84 Fed. Reg. 33319, 33325. The Deposit Sweep Programs are both an investment strategy and account recommendation within the meaning of Reg BI. By automatically enrolling the Classes in the Deposit Sweep Programs, MMLIS made an account recommendation and/or recommended an investment strategy subject to Reg BI.

62. Reg. BI consists of a "General Obligation," which states, "[w]hen making a recommendation, a broker-dealer must act in the retail customer's best interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320.

63. Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

64. These specific duties require disclosure of "all material facts relating to conflicts of interest . . . that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

[20] *Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Account Recommendations for Retail Investors*, SEC (Mar. 20, 2022), https://www.sec.gov/about/divisions-offices/division-trading-markets/broker-dealers/staff-bulletin-standards-conduct-broker-dealers-investment-advisers-account-recommendations-retail ("Staff Bulletin").

65. One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for recommending some products rather than others, whether received by the broker-dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

66. Pursuant to Reg. BI, MMLIS is and was required to act in the best interests of its customers when recommending an account type—including automatically selecting the Deposit Sweep Programs as the vehicles for customers' uninvested cash to earn interest—to its customers, including "understanding of the characteristics of a particular type of account [and] . . . should consider, without limitation, factors such as the services and products provided in the account (including ancillary services provided in conjunction with an account type)."[21]

67. MMLIS acknowledged that the selection of Plaintiff's sweep option was a security recommendation in the Wrap Fee Brochure that was in effect at the time Plaintiff opened his account: "Except for the selection of the sweep option described below in its capacity as broker-dealer, [MMLIS] . . . will not make any individual security recommendations on behalf of clients."

68. The SEC recently reiterated that compensation, revenue, and other benefits from cash sweep programs give rise to a conflict of interest for both broker-dealers and investment advisers.[22]

69. Under Reg. BI, MMLIS was and is prohibited from elevating its own interest above its customers' interests when recommending an account type or investment strategy, and was and is obligated to avoid conflicts with customers' interests and to disclose material facts concerning any conflicts that may exist.

[21] Staff Bulletin.
[22] *Id.*

70. MMLIS's automatic placement of uninvested cash from Plaintiff's and the Classes' accounts into deposit accounts with Program Banks as a part of the Deposit Sweep Programs constitutes a "recommendation" within the scope of Reg. BI, and as a result, MMLIS was required to act in the best interests of its customers when making that recommendation.

**3. The Investment Advisors Act**

71. When MMLIS acts as an investment adviser for customer accounts, it owes its customers a fiduciary duty. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 33669, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.").

72. "The [Investment] Advisers Act [("IAA")] establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the [IAA]." *Id.* at 33670.

73. Under this federal duty, MMLIS "must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client." *Id.* at 33671.

74. If there is a conflict between one of MMLIS's interests and its client's interests, then MMLIS is required to "eliminate or make full and fair disclosure of all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." *Id.*

75. MMLIS "must make full and fair disclosure to [their] clients of all material facts relating to the advisory relationship." *Id.* at 33675.

76. MMLIS's fiduciary duties also include a duty of care to "Provide Advice That Is in the Best Interest of the Client" and must acknowledge to a client, "when the account types the adviser offers are not in the client's best interest." *Id.* at 33674.

77. MMLIS's federal fiduciary duty "may not be waived." *Id.*

**4. The Massachusetts Fiduciary Rule**

78. Massachusetts law separately imposes a fiduciary duty on MMLIS to act with "utmost care and loyalty to the customer" when it provides investment advice or recommends "an investment strategy, the opening of or transferring of assets to any type of account, or the purchase, sale, or exchange of any security." 950 Mass. Code Regs. § 12.207 (the "Massachusetts Fiduciary Rule"). This duty applies when MMLIS recommends and/or automatically directs and/or transfers customers' funds into the Deposit Sweep Programs.

79. The Massachusetts Fiduciary Duty Rule requires "each broker-dealer or agent [to] adhere to duties of utmost care and loyalty to the customer."

80. Specifically, among other duties, the Massachusetts Fiduciary Duty Rule requires MMLIS to "[m]ake all reasonably practicable efforts to avoid conflicts of interest, eliminate conflicts that cannot reasonably be avoided, and mitigate conflicts that cannot reasonably be avoided or eliminated" and to "[m]ake recommendations and provide investment advice without regard to the financial or any other interest of any party other than the customer."

81. By placing its own interest in collecting substantial fees over the interests of Plaintiff and Class members to earn a reasonable rate of interest in their uninvested cash and automatically transferring or enrolling customers in the Deposit Sweep Programs even when they had previously been receiving a higher rate of return by directing uninvested cash to a money market fund, MMLIS breached its fiduciary duty under the Massachusetts Fiduciary Rule.

**5. MMLIS's Regulatory Duty to Obtain Affirmative Consent**

82. Beginning in the late 1990s, brokerage firms like MMLIS began "sweeping" customer's cash into bank accounts of affiliated entities that were lawfully able to use that cash to generate profits in their operations. The movement of that cash frequently came with only minimal

disclosure to customers that their cash was being transferred to affiliated entities. Most times the customer only earned a *de minimus* return on that cash—well below the amounts earned by the affiliated entities and paid to MMLIS on the use of the cash.

83. In 2013, the SEC, to counter this abuse in the brokerage industry, promulgated regulations establishing specific procedures for brokerage companies to contract with customers to sweep cash to affiliated entities.

84. The SEC, effective March 3, 2014, adopted a Final Rule amending 17 C.F.R. § 240.15c3-3 to add subparagraph (j)(2) requiring that brokerage firms like MMLIS first secure a customer's "prior written affirmative consent" in order to form a binding contract with customers for the use of their cash. *See* Final Financial Responsibility Rules for Broker-Dealers at 60, Exchange Act Release No. 34-70072 (Oct. 21, 2013), 78 Fed. Reg. 51824 (August 21, 2013).

85. Thus, in addition to following common law contract principles, MMLIS is mandated to comply with 17 C.F.R. § 240.15c3-3(j)(2) *before* sweeping cash accounts.

## V. CLASS ACTION ALLEGATIONS

86. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and (b)(3) on behalf of the following Classes:

> **Nationwide Class:** All customers residing in the United States and holding MMLIS investment accounts whose uninvested cash is placed in deposit accounts as part of the Deposit Sweep Programs.
>
> **Money Market Sub-Class:** All customers residing in the United States and holding MMLIS investment accounts whose core investment vehicle was automatically changed from a money market fund to a Deposit Cash Sweep Program.

87. Excluded from the Classes are Defendant and its parents, subsidiaries, and corporate affiliates, and governmental entities. Plaintiff reserves the right to revise the definition of the Classes and reserves the right to establish Sub-Classes where appropriate.

88. Members of the Classes are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. Plaintiff believes that there are at least tens of thousands of proposed members of the Classes throughout the United States. The Classes may be identified from Defendant's business records.

89. Common questions of law and fact exist as to all the Class members and predominate over any issues solely affecting individual Class members. The common and predominating questions of law and fact, each of which may also be certified under Rule 23(c)(4), include, but are not limited to:

a. Whether MMLIS owed fiduciary duties to Plaintiff and the Classes in connection with the Deposit Sweep Programs;

b. Whether MMLIS breached its duties to Plaintiff and the Classes in establishing, maintaining, and/or operating the Deposit Sweep Programs;

c. Whether MMLIS breached its contracts with Plaintiff and the Classes regarding the Deposit Sweep Programs;

d. Whether MMLIS breached the implied covenant of good faith and fair dealing with Plaintiff and the Classes regarding the Deposit Sweep Programs;

e. Whether MMLIS violated Mass. Gen. Law ch. 93A §§ 2 and 9, in connection with the Deposit Sweep Programs;

f. Whether MMLIS violated N.Y. Gen. Bus. Law § 349 in connection with the Deposit Sweep Programs;

g. Whether the Deposit Sweep Programs unjustly enriched MMLIS;

h. Whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

i. Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

j. Whether and to what extent Plaintiff and the Classes are entitled to recover attorneys' fees and costs.

90. Plaintiff's claims are typical of the claims of the Classes that Plaintiff seeks to represent. As alleged herein, Plaintiff and the Classes sustained damages arising out of the same unlawful actions and conduct by Defendant.

91. Plaintiff is willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Classes and has no interests adverse to or in conflict with the interests of the Classes.

92. Plaintiff's interests are co-extensive with and are not antagonistic to those of absent members within the Classes. Plaintiff will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

93. Plaintiff has engaged the services of the undersigned counsel. Counsel is experienced in complex class action litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiff and the absent Class members.

94. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

95. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

96. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

97. The Classes may also be certified under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

98. The interest of members within the Classes individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

99. The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers, and/or on the internet.

## VI. CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty

100. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

101. Plaintiff brings this cause of action individually and on behalf of all Class members against MMLIS.

102. At all relevant times, MMLIS owed fiduciary duties to Plaintiff and the Classes in connection with their brokerage accounts. Such duties independently arose out of (1) MMLIS's exercise of control and discretion over funds that belonged to its customers, related to their cash sweep balances; and/or (2) the applicable industry standards.

103. MMLIS exercised control and discretion over Plaintiff and the Classes' funds when it selected the cash sweep option available for their MMLIS accounts.

104. Plaintiff and Class members depended on, and placed their trust and confidence in, MMLIS's judgment, honesty, and integrity to select appropriate cash sweep options, to operate the Deposit Sweep Programs, and to secure reasonable rates of return on swept cash.

105. Under Reg. BI and the Massachusetts Fiduciary Rule, MMLIS owed duties to Plaintiff and the Classes by nature of its broker-dealer relationship with Plaintiff and the Classes, and those duties are tantamount to fiduciary obligations for the purposes of this litigation.

106. Under the IAA, MMLIS owed duties to customers to which it provided investment advisory services, and those duties are tantamount to fiduciary obligations for the purposes of this litigation.

107. As their fiduciary, MMLIS had a continuing duty to act exclusively for the benefit of Plaintiff and the Classes in connection with establishing, maintaining, and/or operating the Deposit Sweep Programs.

108. As a fiduciary to Plaintiff and the Classes, at all relevant times, MMLIS's duties to Plaintiff and the Classes included, but were not limited to:

a. a duty of undivided loyalty;

b. a duty to act in the best interests of its clients;

c. a duty of care;

d. a duty not to place MMLIS's interests above those of its clients;

e. a duty to avoid conflicts of interest; and

f. a duty to disclose any conflicts of interest.

109. MMLIS violated each of the foregoing duties when it (1) automatically allocated Plaintiff's and the Classes' cash into deposit accounts that benefited MMLIS's interests above its customers' interests; and (2) set and paid an unreasonably low rate of interest on Plaintiff's and the Classes' cash balances in the Deposit Sweep Programs.

110. As a direct and proximate consequence of MMLIS's conduct as alleged herein, Plaintiff and the Classes suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of MMLIS, punitive damages, as well as all other equitable relief deemed just and proper.

**COUNT II**
**Breach of Contract**

111. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

112. Plaintiff brings this cause of action individually and on behalf of all Class members against MMLIS.

113. Plaintiff and the Classes entered into written contracts with MMLIS—the terms of which are contained in and incorporated into various standardized documents drafted by MMLIS, including the ACS Program Disclosure and ICS Program Disclosure. These documents were and are, for all purposes relevant hereto, contracts between customers and MMLIS.

114. In the ACS Program Disclosure and ICS Program Disclosure, MMLIS promised that the interest rates for all customers under the Deposit Sweep Programs would "vary based on prevailing economic and business conditions."

115. Yet the interest rates provided by MMLIS did not reflect improving interest rate conditions, including the skyrocketing federal funds rate. Nor did they vary. Instead, they remained largely static. Thus, the interest rates were not based on economic and business conditions. Instead, the sweep rates were determined based on MMLIS's motivation to earn profits at the expense of its customers.

116. As a direct and proximate result of MMLIS's breaches of contract, Plaintiff and the Classes sustained damages.

**COUNT III**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

117. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

118. Plaintiff brings this cause of action individually and on behalf of all Class members against MMLIS.

119. Plaintiff and the Classes entered into written contracts with MMLIS—the terms of which are contained in and incorporated into various standardized documents drafted by MMLIS,

including the ACS Program Disclosure and ICS Program Disclosure. These documents were and are, for all purposes relevant hereto, contracts between customers and MMLIS.

120. Plaintiff and the Classes paid valuable consideration in exchange for these contractual rights.

121. Implicit in these contracts were and are duties of good faith and fair dealing.

122. Plaintiff and the Classes reasonably expected to receive fair and reasonable interest rates on their cash deposits in the Deposit Sweep Programs.

123. Defendant breached its duties of good faith and fair dealing by failing to provide Plaintiff and the Classes with fair and reasonable interest rates on their cash deposits in the Deposit Sweep Programs. Rather, the interest rates provided by MMLIS were well below several objective benchmarks including the federal funds rate, which increased dramatically while the interest rates in the Deposit Sweep Programs largely remained flat. As such, MMLIS acted in bad faith and denied Plaintiff and the Classes the full benefit of their bargain under their contracts with MMLIS.

124. Plaintiff and the Classes suffered damages as a direct and proximate result of the foregoing breach of the implied covenant of good faith and fair dealing, and they are entitled to damages from MMLIS, plus prejudgment interest thereon.

**COUNT IV**
**Violation of Mass. Gen. Law ch. 93A, §§ 2 and 9**

125. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

126. Plaintiff brings this cause of action individually and on behalf all Class members against MMLIS.

127. Both Plaintiff and MMLIS are "persons" as defined in Mass. Gen. Laws ch. 93A, § 1(a).

128. MMLIS's dealings with Class members, as described herein, constitute "trade" and "commerce" under Mass. Gen. Laws ch. 93A, § 1(b).

129. Section 2(a) of Mass. Gen. Laws ch. 93A (the "Massachusetts Consumer Protection Law") proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce."

130. Under Mass. Gen. Laws ch. 93A § 2(c), the Massachusetts Attorney General is empowered to make rules and regulations defining the "unfair or deceptive acts or practices" that violate §2(a). One such regulation, among others, provides that an "act or practice is a violation of [ch. 93A] if … [a]ny person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." 940 Mass. Reg. § 3.16.

131. Ch. 93A, § 11 provides a right of action to any person engaged in trade or commerce who suffers a loss of money or property from another person's use, in trade or commerce, of an unfair method of competition or an unfair or deceptive act or practice.

132. MMLIS's acts and practices, as alleged herein, are unfair and deceptive. Among other things: (i) MMLIS defaults customers into interest rates that are significantly below market interest rates; (ii) MMLIS changed Plaintiff's and Class members' sweep program from money market funds to the Deposit Sweep Programs without their affirmative written consent; (iii) MMLIS falsely claims that interest rates on cash held in the Deposit Sweep Programs will vary based on prevailing economic and business conditions;" (iv) MMLIS provides unreasonably low and unfair interest rates, considerably lower than the comparable accounts offered by its competitors; and (v) MMLIS places customers into the Deposit Sweep Programs at paltry interest rates that are neither suitable nor in the customers' best interest.

133. MMLIS's conduct violated a common-law, regulatory, or other established concept of fairness and was unethical or unscrupulous. 17 C.F.R. § 240.15c3-3(j)(2) is among the specific regulations MMLIS violated.

134. Plaintiff and Class members have been and continue to be injured as a direct and proximate result of MMLIS's violations of the Massachusetts Consumer Protection Law.

135. MMLIS knew or should have known that its conduct violated the Massachusetts Consumer Protection Law.

136. In accordance with Mass. Gen. Laws ch. 93A, § 9(3), Plaintiff delivered a written demand for relief upon MMLIS, describing MMLIS's unfair and deceptive acts, the injury he and other MMLIS customers have suffered, and demanding that MMLIS cease its unlawful conduct on September 18, 2025. This demand letter was sent to MMLIS more than 30 days before MMLIS's answer to Plaintiff's initial complaint was due. MMLIS has failed to remedy its unlawful conduct within the requisite time period.

**COUNT V**
**Violation of N.Y. Gen. Bus. Law § 349**

137. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

138. Plaintiff brings this cause of action individually and on behalf of Class members subjected to unfair and deceptive business practices in New York by MMLIS or its representatives against MMLIS.

139. MMLIS's acts and practices with respect to the Deposit Sweep Programs constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL"). MMLIS unlawfully and unfairly benefitted and enriched itself and misled and deceived customers in the Deposit Sweep Programs through, among

other: (i) defaulting customers into interest rates that are significantly below market interest rates; (ii) changing Plaintiff's and Money Market Sub-Class members' sweep program from money market funds to the Deposit Sweep Programs without their affirmative written consent; (iii) falsely claiming that interest rates on cash held in the Deposit Sweep Programs will vary based on prevailing economic and business conditions; (iv) providing unreasonably low and unfair interest rates; and (v) placing customers into the Deposit Sweep Programs at paltry interest rates that are neither suitable nor in the customers' best interest, all without providing effective notice of competitive interest rates.

140. MMLIS's misleading and deceptive business acts and practices with respect to the cash sweep vehicles adversely impacted Plaintiff and the Classes, and, therefore, constitute consumer-oriented conduct under GBL § 349, which resulted in direct harm to Plaintiff and the Classes.

141. Accordingly, Plaintiff and the Classes seek appropriate relief under GBL § 349, including injunctive relief and damages.

## COUNT VI
## Unjust Enrichment

142. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

143. Plaintiff brings this cause of action individually and on behalf of all Class members against MMLIS.

144. As a result of MMLIS's wrongful conduct, Plaintiff and the Classes received unreasonably and unfairly low interest payments on uninvested cash in their MMLIS investment accounts.

145. As a result of MMLIS's wrongful conduct, MMLIS was unjustly enriched because, among other benefits, it received significantly higher fees than it would have but for their wrongful conduct. MMLIS's unjust enrichment was at Plaintiff and Class members' expense.

146. MMLIS appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the Classes.

147. It would be inequitable, unjust, and against good conscience to permit MMLIS to retain these wrongfully obtained profits.

148. MMLIS's retention of these unjustly obtained benefits would violate the fundamental principles of justice, equity, and good conscience.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Classes, and award the following relief:

a. An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Classes, and Plaintiff's counsel as counsel for the Classes;

b. Appropriate injunctive and equitable relief;

c. A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

d. An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, and out-of-pocket costs in an amount to be determined at trial;

e. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

f. An award of costs, expenses, and attorneys' fees as permitted by law; and

g. Such other or further relief as the Court may deem appropriate, just, and equitable

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: November 18, 2025

Respectfully submitted,

*<u>/s/ Maria F. Deaton, Esq.</u>*
Maria F. Deaton (BBO # 645784)
**LYNCH & PINE ATTORNEYS AT LAW, LLC**
One Park Row, 5th Floor
Providence, RI 02903
Telephone: (401) 274-3306
Facsimile: (401) 274-3326
mdeaton@lynchpine.com

-and–

Joseph H. Meltzer (*pro hac vice* forthcoming)
Melissa L. Yeates (*pro hac vice* forthcoming)
Jonathan F. Neumann (*pro hac vice* forthcoming)
Daniel S. Dicce (*pro hac vice* forthcoming)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
myeates@ktmc.com
jneumann@ktmc.com
ddicce@ktmc.com

-and–

James E. Cecchi (*pro hac vice* forthcoming)
Kevin G. Cooper (*pro hac vice* forthcoming)

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

***Counsel for Plaintiff and the Proposed Classes***

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the above Amended Class Action Complaint has been filed through the ECF system on November 18, 2025, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as nonregistered participants by email and/or first-class mail, postage prepaid.

*/s/ Maria F. Deaton, Esq.*
Maria F. Deaton, Esq. (BBO# 645784)